## JACOB F. RAUB v. A. F. VAN HORN.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY.

Argued March 14, 1890—Decided March 24, 1890.

1. The covenant of a physician, on the sale of the good-will and practice of his profession, that he will not resume practice in the village or its vicinity, is not broken by his opening an office four miles distant and there treating patients from the vicinity of the village, who come to him without his solicitation.
2. The right to an order upon the opposite party for the production of the books and papers of the latter, under § 1, act of February 27, 1798, 3 Sm. L. 303, is confined to their production on the trial of the cause, unless where the parties have a common interest in the instruments of evidence called for.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 316 January Term 1890, Sup. Ct.; court below, No. 50 February Term 1888, C. P.

On February 10, 1888, Alfred F. Van Horn entered an appeal from the judgment of a justice of the peace against him in favor of Jacob F. Raub, for the sum of $150. Issue.

The plaintiff's action being for the recovery from the defendant of a sum agreed to be paid by the latter for the good-will of the plaintiff's practice and profession as a physician at the village of Williamsburg in Northampton county, on May 6, 1889, upon the petition and affidavit of the defendant that the plaintiff had treated a number of patients and practiced medicine in Williamsburg and vicinity, contrary to the provisions of said contract, and that the plaintiff kept books of account which purported to be a daily record of his practice and of the amount he charged his patients and whom he treated, the court granted a rule on the plaintiff " to show cause why he should not produce said books in court forthwith."

On May 13, 1889, after argument of the rule, the court, SCHUYLER, P. J., filed the following opinion :

This is an application by the defendant under § 1, act of Feb-

ruary 27, 1798, 3 Sm. L. 303, for an order requiring the plaintiff to produce forthwith and in advance of trial the plaintiff's private books of account, on an allegation supported by affidavit that said books contain evidence pertinent to the issue. In Thomas v. Smith, 1 T. & H. Pr. § 610, note, a similar application was dismissed for the following very satisfactory reasons : " The act of February 27, 1798," say the court, " is a highly penal statute, and although in terms it does not confine the rule to produce books and papers to the trial of the cause, yet the uniform practice under the act has so confined it. To extend it further would be accompanied with great danger and inconvenience. The right to inspect books and papers before the trial has therefore been confined to the cases where the parties have a common interest in the instrument of evidence called for. Where books and papers are produced before the court and jury, in a public court, there is an evident restraint upon making an improper use of them. Were we to establish the precedent asked for, every defendant who was unwilling to pay the plaintiff's demand, would resort to this mode for the purpose of fishing up a defence or attack upon the plaintiff, from his books and papers." We can add nothing profitably to what is here so well said. Rule discharged ; exception.[15]

—The court however, entered an order that the plaintiff produce the books described in the affidavit filed, on the trial of the case.

At the trial on May 13, 1889, the plaintiff claimed to recover the second instalment of $150, payable by the defendant under a contract between the parties for the sale by the plaintiff to the defendant of the good-will and practice of the plaintiff's profession as a physician at Williamsburg and vicinity, dated August 19, 1886, and containing the following provision :

" The said Jacob F. Raub hereby covenants, promises and agrees to transfer to the said Alfred F. Van Horn, so far as it is possible for him so to do, the good-will and practice of his profession at the said village and its vicinity, and to relinquish the practice of medicine at said place on the first day of September, 1886, and that he will not resume the practice of his said profession at the aforesaid village and its vicinity so long as he, the said Alfred F. Van Horn, shall practice there, without the consent of the said Alfred F. Van Horn ; and the said

Charge of Court below.

Jacob F. Raub further promises and agrees to remain in said village until the first day of October next, and to introduce the said Alfred F. Van Horn to his patrons; in consideration whereof, the said Alfred F. Van Horn promises and agrees to pay to the said Jacob F. Raub the sum of $1,200, in manner as follows: $300 on the day of the execution of this contract; $150 on the first day of March, 1887; $150 on the first day of September, 1887; $150 on the first day of March, 1888; $150 on the first day of September, 1888; $150 on the first day of March, 1889; and $150 on the first day of September, 1889."

The defendant having adduced testimony to the effect that the plaintiff had opened an office at Bangor, between four and five miles from Williamsburg, and there treated patients from Williamsburg and vicinity, in violation of his own covenants in the foregoing contract, as and claimed, the court, SCHUYLER, P. J., charged the jury:

[The theory of the defendant is that the agreement in suit is what is called an entire contract, and being such, that the plaintiff, before he can recover, must show a perfect and complete performance of his part of it. It is true that the contract in suit is an entire contract, but we think the rule contended for by the defendant is too stringent.

This subject has been before our Supreme Court a number of times, and I think I cannot convey to you the situation of the law bearing upon it, so well as by reading to you what is said by the Supreme Court. In Chambers v. Jaynes, 4 Pa. 43, it is said: "It is contended by the counsel for the defendant that the plaintiff, having averred complete performance of his contract within the time specified, is bound to make out his case precisely as he has stated it, and that the verdict shows that he did not complete his contract within the time specified, and in fact has never done it; that, too, without any fault or interference of the defendant. As a general rule, it is undoubtedly true that where a contract is entire it is incumbent on the plaintiff to show a performance of all that was stipulated on his part to be performed, and, on failure so to do, he is not entitled to recover anything. But there is an exception to this rule, and that is, that where there has been a substantial and bona fide compliance on the part of the plaintiff with his

contract, he shall not be precluded from recovery of his compensation on account of some slight imperfection, for which the defendant may be compensated in damages. This doctrine was first established by the case of Boon v. Eyer, 1 H. Black. 273, in note, and has been fully adopted in our Supreme Court in the cases of Ligget v. Smith, 3 W. 331; Preston v. Finney, 2 W. & S. 53; Wilhelm v. Caul, 2 W. & S. 26."

In 2 W. & S. 55, SERGEANT, J., says: "Should a party stipulate for the performance of an entire service or contract, and then having but part performed it, voluntarily abandon the service, or leave the work unfinished or in such a state as to be useless, he could not claim to recover anything. So, if he obstinately and perversely refuse to go on and complete it when it is in his power, and when the other party requests it and offers to pay for it, as was the case in Shaw v. Turnpike Co., 3 P. & W. 445. But suppose the party acting honestly and with a bona fide intention of fulfilling the contract, perform it substantially, but fails in some comparatively slight particulars, ought the other party to hold and enjoy the fruits of his labor and money and time, without paying a fair compensation, according to the contract, receiving credit for whatever loss or damage he may have sustained by these deviations? We think not. In those cases where the law allows a party to recover on a quantum meruit or quantum valebat, where there is a special contract, this is the principle which applies. The party is allowed to recover, says PARKER, C. J., in Hayward v. Leonard, 7 Pick. 187, in those cases only in which there is an honest intention to go by the contract, and a substantive execution of it, but some comparatively slight deviations as to some particulars provided for. Cases of fraud or gross negligence may be exceptions."

So also in the case of the Danville Bridge Company v. Pomroy, 15 Pa. 159: "So, too, a covenant which is in form entire, but in truth embraces a variety of acts, more or less essential to the whole performance, may be so discharged as to sustain an averment of performance, though a literal compliance cannot be alleged. Wilhelm v. Caul, 2 W. & S. 26; Preston v. Finney, 2 W. & S. 53; Chambers v. Jaynes, 4 Pa. 39, are examples of this. Each of them proceeds upon the ground that, where a party, acting honestly, and intending to fulfil

Charge of Court below.

his contract, performs it substantially, but fails in some comparatively unimportant particulars, the other party will not be permitted to enjoy the fruits of such imperfect performance, without paying a fair compensation according to the contract, receiving a credit for any loss or inconvenience suffered. And, perhaps, it may be asserted that where a thing is so far perfected as to answer the intended purpose, and it is taken possession of and turned to that purpose by the party for whom it is constructed, no mere imperfection or omission, which does not virtually affect its usefulness, can be interposed to prevent a recovery, subject to a deduction for damages, consequent upon the imperfection complained of. Of course, the indulgence is not to be so stretched as to cover fraud, gross negligence, or obstinate and wilful refusal to fulfil the whole engagement, or even a voluntary and causeless abandonment of it."] [1]

Of course, these principles have no application, if, as the plaintiff contends, he has fully performed all his covenants. In that event, your verdict must be for the plaintiff for the full amount of his claim. On the other hand, if the plaintiff has violated either one of his covenants, even in a trifling particular, and has done so intentionally, wilfully or carelessly, your verdict must be for the defendant. [But, in your deliberations, you may search for a middle ground between these two positions ; that is to say, you may arrive at the conclusion that the plaintiff did not perform all his covenants, but that he performed them substantially, and honestly intended to perform them to the strict letter, but that he failed to do so in some comparatively unimportant particulars, which failure may be compensated in damages. If you reach this conclusion, then, on the one hand you will credit the plaintiff with the full amount of his claim, and on the other you will credit the defendant with such damages, if any, as you may find he has sustained, and render your verdict accordingly.] [2] . . . . .

The plaintiff requests the court to charge :

1. If the jury find that Bangor was not in the vicinity of Williamsburg, it was no violation of the contract for the plaintiff to treat patients residing at or in the vicinity of Williamsburg, who without solicitation on his part came to his office in Bangor for treatment.

Opinion of the Court.

Answer: That point I affirm.[11]

The defendant requests the court to charge:

14. The plaintiff had no right, under the contract, to open an office immediately outside of the territory in which he sold his good-will, and in which he agreed to transfer his practice, and treat the patients who resided within said territory at his office outside said territory.

Answer: I cannot affirm that point.[7]

15. If the plaintiff's old patients solicited the plaintiff to treat them, said solicitation forms no excuse for his so doing.

Answer: I answer that point as follows: If the plaintiff's old patients solicited him to treat them, said solicitation would form no excuse for his so doing in Williamsburg and its vicinity. There is nothing in the agreement, however, which would prevent the plaintiff from serving such patients beyond Williamsburg and its vicinity.[8]

—The jury returned a verdict in favor of the plaintiff for $165.57. A rule for a new trial having been discharged, judgment was entered, when the defendant took this appeal, assigning for error:

1, 2. The portions of the charge embraced in [ ] [1] [2]

7, 8. The answers to the defendant's points.[7] [8]

11. The answer to the plaintiff's point.[11]

15. The discharge of the rule to produce books.[15]

*Mr. H. M. Hageman*, for the appellant.

Counsel cited: Chambers v. Jaynes, 4 Pa. 45; Preston v. Finney, 2 W. & S. 53; Danville Bridge Co. v. Pomroy, 15 Pa. 156; Foulke v. Harding, 13 Pa. 246; Rupp v. Over, 3 Brewst. 133; McCord v. Williams, 96 Pa. 78; Sanders v. Hoffman, 64 N. Y. 248; Smith v. Smith, 4 Wend. 468; Gaul v. Hoffman, 5 Pa. C. C. R. 355. Upon the fifteenth assignment: Arrott v. Pratt, 2 Wh. 565; Rose v. King, 5 S. & R. 241; Wright v. Crane, 13 S. & R. 448.

*Mr. William Mutchler*, for the appellee, was not heard.

PER CURIAM:

We find no error in this record.

Judgment affirmed.